CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
May 24, 2024
LAURA A. AUSTIN, CLERK
BY: s/ S. Neily, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| **SHERRILL WORTH STOCKTON, III** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | Civil Action No.: 7:23-cv-00646 |
| ) | |
| **v.** ) | |
| ) | |
| **NEW YORK LIFE INSURANCE CO.,** ) | By: Hon. Robert S. Ballou |
| ) | United States District Judge |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM OPINION**

This contract dispute is before the court on cross motions for partial summary judgment. Plaintiff Sherrill Worth Stockton, III, seeks summary judgment on Defendant New York Life Insurance Co. ("NYLIC")'s liability for breach of contract because it improperly rescinded his disability income coverage. NYLIC asks for a declaration that its recission of Stockton's coverage was proper as a matter of law. To the extent Stockton seeks a finding that the plain language of the policy's incontestability provision prevents recission outside of the contestability period because of alleged misstatements regarding Stockton's medical and recreational activities, his motion is **GRANTED.** Stockton's motion is otherwise **DENIED** under Federal Rule of Civil Procedure 56(d). NYLIC's motion is likewise **DENIED** under Rule 56(d).

**I.     Background**

Stockton is a 56-year-old physician whose specialty is emergency medicine. Dkt. 15 at 2. In April 2020, Stockton applied for disability income insurance under a group policy issued by NYLIC (the "Policy"). *Id.* A NYLIC representative interviewed Stockton regarding his health history and activities to assess his eligibility for coverage.  Dkt. 27 at 4. NYLIC ultimately

accepted Stockton's application and issued a disability policy with coverage effective June 1, 2020. Dkt. 15 at 2.

The Policy entitled Stockton to a monthly benefit amount of $15,000 in the event he became disabled. The benefit is subject to a variety of terms and conditions including an incontestability provision and procedures for submitting a disability claim. The incontestability provision provides:

> **Incontestability:**  Except for provisions which relate to eligibility for insurance and for nonpayment of PREMIUM, New York Life cannot contest the validity of any insurance on an INSURED PERSON after it has been in force for two years prior to the contest under the Policy during such INSURED PERSON'S lifetime. To contest, New York Life will only rely upon (a) written statements signed by the INSURED PERSON (1) in applying for such insurance; and/or (2) used to allow insurance to take effect or be transferred from another policy and or (b) the provisions on the When Insurance Takes Effect page (s). A copy of all statements must be furnished to such person or to his or her beneficiary or assignee.

Dkt. 9-1 at 5. The procedures for submitting a claim provide, in relevant part, "[t]he claimant must contact the Administrator about a claim within 30 days after the commencement of any disability covered by the Policy." Dkt. 9-1 at 4.

In April 2022, Stockton began experiencing multiple symptoms that purportedly prevented him from performing his duties as an emergency physician "reliably and effectively." *Id.* On April 19, 2022, within the Policy's contestability period, Stockton left his employment as an emergency physician. Stockton alleges that between April and December 2022 he consulted multiple physicians to find a diagnosis and believed that he would ultimately be able to return to work. Dkt. 16 ¶¶ 8–9. However, Stockton eventually "concluded that [he] was suffering from cognitive decline and dementia," *id.* ¶ 9, and on December 11, 2022, submitted, for the first time, a Disability Income Claim form to NYLIC (more than five months after the contestability

period closed), *id.*

On February 1, 2023, Dr. Andy Liu, a neurologist in Durham, North Carolina, diagnosed Stockton with Lewy body dementia. *Id.* ¶ 10. On March 1, 2023, Dr. Liu confirmed Stockton's diagnoses to NYLIC on a printed form entitled "Medical Provider's Statement." *Id.*; Dkt. 16-12.

On June 23, 2023 - more than one year after the contestability period closed, and after reviewing Stockton's claim, NYLIC sent a letter formally rescinding Stockton's disability income coverage. *Id.* at ¶ 11. The letter stated that Stockton failed to disclose in his application for coverage that he had a "history of cervicalgia" and "right shoulder pain," and that he "participated in rock climbing" and had suffered "multiple injuries." Dkt. 9-2 at 2. The letter explained, "[i]f this history had been revealed on the Statement of Health portion of your Telephone Interview completed April 29, 2020, New York Life would have declined [his] request for long-term disability coverage." *Id.* at 3. NYLIC enclosed a check "in the amount of $12,926.49 representing a full refund of all premium contributions, plus interest, paid by [Stockton] from June 1, 2020, to June 2023, on the $15,000 disability income coverage." *Id.* Stockton has neither deposited nor negotiated the check and asserts that he is willing and able to return the check to NYLIC. Dkt. 16 ¶ 14. This suit by Stockton seeking long-term disability coverage followed.

## II.     Summary Judgment Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Once the movant properly makes and supports a motion for summary judgment, the opposing party must show that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586–87 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine dispute of material fact exists, the Court views the facts in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. However, the nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *See Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001). On the contrary, the court has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 317).

### III. Analysis

Stockton moves for summary judgement on NYLIC's liability for his disability claim. He argues: 1) NYLIC improperly rescinded his coverage for failing to disclose during the application process preexisting backpain and rock-climbing after the expiration of the contestability period; and 2) by rescinding coverage, NYLIC waived its right to contest coverage under the policy. Conversely, NYLIC seeks a summary judgment order finding that NYLIC's recission fell within the exception to the incontestability provision and was, thus, proper. Alternatively, NYLIC asks the Court to find that Stockton is estopped from enforcing the incontestability clause because he fraudulently delayed submitting his claim until the contestability period expired. I agree with Stockton that the plain language of the incontestability provision prohibits NYLIC from rescinding the policy. However, I find that material factual disputes preclude summary judgment as to the insurance company's liability and NYLIC's estoppel argument.

### A. Stockton is Entitled to Summary Judgment on the Meaning of the Incontestability Provision

Stockton argues that NYLIC cannot rescind his coverage for failing to disclose his

4

backpain and rock-climbing on his application for disability coverage because he filed his disability claim after the expiration of the contestability period and had paid his premiums. Dkt. 15 at 5. NYLIC responds that Stockton's back pain and rock-climbing relate to "eligibility for insurance," thus, NYLIC's recission is excepted from the incontestability provision, which begins "[e]xcept for provisions which relate to *eligibility* for insurance and for nonpayment of PREMIUM, [NYLIC] cannot contest the validity…." Dkt. 27 at 9. It argues that the word "eligibility" should be interpreted broadly to include any factor the insurance company uses to assess risk at the time it issued the policy. Dkt. 27 at 9. NYLIC claims that it would have determined that Stockton was too high risk to insure if it had been aware of his preexisting back pain and rock climbing. *Id.* at 8. Thus, Stockton's back pain and rock climbing go to his eligibility for insurance and, therefore, the company could properly rescind Stockton's policy on those grounds after the incontestability period. *Id.*

Stockton responds in three ways. First, he argues that the purpose of the incontestability provision is to protect insureds from "lulling the insured, by inaction, into fancied security during the time when the facts could best be ascertained and proved, only to litigate them belatedly…." Dkt. 30 at 2 (quoting *Corbett v. Fortis Benefit Ins. Co.*, 81 F.3d 149 (4th Cir. 1996)). Stockton argues this is exactly the situation presented here. *Id.* Second, he argues that NYLIC's interpretation of "eligibility" is so broad that it would swallow the entire incontestability provision. Third, he argues that the contract and case law define "eligibility" as an issue of employment not medical history. *Id.* at 3 (noting that the contract defines "ELIGIBLE MEMBER" as "any active member or physician who is eligible for membership in the American Medical Association 'AMA'); *Id.* at 4 (citing cases).

NYLIC counters that its interpretation of "eligibility" does not "swallow" the rest of the

incontestability provision because the incontestability provision relates to the "validity" of the policy and the exception relates to an insured's "eligibility." Dkt. 31 at 2. NYLIC also argues that there are multiple contractual provisions which relate to "eligibility for insurance" (not just the definition of "ELIGIBLE MEMBER") and the additional provisions include the insured's medical history. For example, NYLIC points to the "For Insurance to Take Effect" subsection which provides, in relevant part, that for "initial insurance to take effect" the APPLICANT must give [NYLIC] satisfactory medical evidence of insurability…."[1] NYLIC concludes that because "satisfactory medical evidence" is required for the policy to take effect it relates to "eligibility for coverage" at the policy's "inception." Thus, "satisfactory medical evidence of insurability" is a "provisions which relate to eligibility for insurance" and is exempted from the incontestability provision. *Id.* at 3–4.

A narrow interpretation of the word "eligibility" in the exception to the incontestability provision that is limited to the applicant's employment, age and residency, and does not, as NYLIC contends, include the insurability of an applicant is consistent with Virginia principles of contract interpretation and the typical understanding of incontestability clauses. Under Virginia law, an insurance policy is subject to rules of contract interpretation. *See Capital Environmental Services, Inc. v. North River Insurance Co.*, 536 F. Supp. 2d 633, 640 (E. D. Va. 2008). The interpretation of a contract is a question of law. *City of Chesapeake v. States Self-Insurers Risk Retention Group, Inc.*, 628 S.E. 2d 539, 541 (Va. 2006). The contract is construed as written, without adding terms that were not included by the parties. *Wilson v. Holyfield,* 313 S.E.2d 396, 398 (Va. 1984). When the terms in a contract are clear and unambiguous, the contract is

---

[1] NYLIC also cites the "When Insurance Ends" provision, which provides that an insured person must be actively engaged in full-time work. Dkt. 31 at 5. Because Plaintiff left his job before filing his claim, NYLIC argues that regardless of whether the recission was valid, Stockton's insurance was terminated. That is not relevant to the question before the court – was the recission letter issued in June 2023 effective?

construed according to its plain meaning. *Bridgestone/Firestone, Inc. v. Prince William Square Assocs.*, 463 S.E.2d 661, 664 (Va. 1995). "Words that the parties used are normally given their usual, ordinary, and popular meaning. No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly." *D.C. McClain, Inc. v. Arlington County,* 452 S.E.2d 659, 662 (Va. 1995). In the context of insurance, "Virginia follows the accepted maxim…that when there is a reasonable doubt about the meaning of an insurance policy, such doubt should be resolved in favor of coverage for the insured." *Cochrane v. Travelers Ins. Co.*, 547 F. Supp. 816, 819 (E.D. Va. 1982) (citations omitted). But "(w)hile any ambiguity must be resolved against the insurer, the construction adopted should be reasonable, and absurd results are to be avoided." *Id.*

Here, interpreting the word "eligibility" in the incontestability provision in a way that aligns with the policy's definition of "ELIGIBLE MEMBER" is consistent with basic principles of contract interpretation. The contract defines "ELIGIBLE MEMBER" as, among other things,

> (1) any active member of or physician who is eligible for membership in the [AMA]. Such member must be engaged as next defined (a) ACTIVELY ENGAGED FULL-TIME WORK in: the practice of medicine; medical research; administration of medical facilities or services; programs of internship or residence; or a combination of those activities…(3) less than age 60 at time of issue for the Member Plan…(4) a resident of the United States or District of Columbia..

Dkt. 9-1 at 14. There is no reason "eligible" would be limited to an individual's employment status, age, and residency in one provision and refer to an entirely separate set of criteria in the incontestability clause. It makes far more sense to read the words "eligible" and "eligibility" consistently across the contract.[2] *See TravCo Ins. Co. v. Ward*, 284 Va. 547, 552 (2012) ("Each

---

[2] Notably, a narrow interpretation of "eligible" is also consistent with the use of the word in the "Exception" to the "For Insurance To Take Effect" provision, which describe an "eligible" person as one who is "actively engaged in full time work":

> The EFFECTIVE DATE for a proposed INSURED PERSON who was not at ACTIVELY ENGAGED FULL-TIME WORK on the date such insurance would otherwise have taken effect is

7

phrase and clause of an insurance contract should be considered and construed together and seemingly conflicting provisions harmonized when that can be reasonably done….") (internal citations omitted). NYLIC argues that "provisions which relate to eligibility for insurance" cannot refer to ELIGIBLE MEMBER alone because "provisions" is plural. Dkt. 31 at 3. But the definition of ELIGIBLE MEMBER contains multiple provisions. Thus, Stockton's interpretation of the incontestability clause does not render the use of "provisions" plural meaningless.

Second, narrowly interpreting the exception to the incontestability clause is consistent with the principle that a provision should not be treated "as meaningless if a reasonable meaning can be given to it…" *D.C. McClain,* 452 S.E.2d at 661–62. By contrast, NYLIC's broad understanding of eligibility would render the incontestability provision superfluous. If, as NYLIC suggests, "eligibility" refers to any factor the company used to assess risk at the time the policy was issued, then NYLIC could contest the validity of the policy at any time for any reason. Thus, impermissibly negating the incontestability provision.[3]

Third, NYLIC's reliance on the "For Insurance to Take Effect" provision is not supported by the plain language of the contract. The "For Insurance to Take Effect" provision lays out the procedural steps a potential insured must take before they are covered by the policy i.e., submit a "written request for insurance." Dkt. 31 at 4. That is plainly distinct from whether an individual is "eligible" for insurance coverage. For example, it would be illogical to find that the requirement that "New York Life…approve the insurance," number 5 in the "For Insurance to

---

> the first day of the month on or after the day the proposed INSURED PERSON returns to ACTIVELY ENGAGED FULL-TIME WORK if the INSURED PERSON is still *eligible* to obtain insurance on that day.

Dkt. 16-8 at 3 (italics added).

[3] During the hearing, the court asked NYLIC's counsel to provide an example of a "contest" that would be barred by the incontestability provision if the court were to adopt defendant's interpretation of "eligibility." Counsel was unable to do so.

Take Effect," relates to eligibility. Presumably, NYLIC would only approve the insurance for individuals already deemed to be "eligible."

Narrowly interpreting eligibility to refer to an insured's employment status, age or residency is also consistent with most case law, which suggests that "eligibility" is typically understood in the insurance context to refer to an insured's status not his/her medical history. For example, Plaintiff cites to *Corbett* and *Fisher*. In both cases, the word "eligible" was defined in the insurance contracts in terms of the insured's employment status. *See* 81 F.3d at *1; 249 F.2d 879, 880 (4th Cir. 1957). *But see Hornback v. Bankers Life Ins. Co.* 176 S.W.3d 699, 700 (Ky. Ct. App. 2005) (listing pre-existing medical conditions on the insured's "Eligibility Statement"). Likewise, in *Gudnason v. Life Ins. Co. of North America*, 343 S.E.2d 54, the relevant contract defined "eligibility" as a define class of individuals who could obtain insurance. *Id.* at 880.

Thus, the Court finds that the Policy's incontestability provision prevents NYLIC from rescinding the policy outside of the incontestability period because Stockton failed to disclose his history of back pain and rock climbing.

### B. There is a Genuine Dispute as to Whether Stockton is Estopped From Enforcing the Incontestability Period

NYLIC next argues that even if the Court adopts Stockton's interpretation of the incontestability provision, NYLIC's recission was proper because Stockton is estopped from enforcing the two-year incontestability period. NYLIC argues that estoppel is appropriate because Stockton fraudulently delayed submitting his disability claim until the contestability period expired. Stockton makes two arguments in opposition. First, he argues that NYLIC waived this argument because he failed to plead estoppel in its Answer. Dkt. 30 at 7. Stockton is incorrect. "[E]stoppel" is listed under NYLIC's "Seventh Affirmative Defense." Dkt. 9 at 27–28.

9

Second, Stockton argues that NYLIC has failed to conclusively establish "the existence of the elements of estoppel in the record of this case." Dkt. 30 at 7. I agree. Accordingly, summary judgment is not appropriate as to whether Stockton is estopped from enforcing the incontestability provision.

Under Virginia Law, "to invoke equitable estoppel a party must prove 'by clear, precise, and unequivocal evidence' that (1) a 'material fact was falsely represented or concealed'; (2) the 'representation or concealment was made with knowledge of the fact'; (3) the 'party to whom the representation was made was ignorant of the truth of the matter'; (4) the 'representation was made with the intention that the other party should act upon it'; the 'other party was induced to act upon it'; and (6) the 'party claiming estoppel was misled to his injury.'" *See Heritage Disposal & Storage, L.L.C. v. VSE Corp.*, 2017 WL 361547, at \*12 (E.D. Va. Jan. 24, 2017) (quoting *Boykins Narrow Fabrics Corp. v. Weldon Roofing & Sheet Metal, Inc.*, 266 S.E.2d 887, 890 (Va. 1980)). Here, there are questions of disputed fact as to almost all these elements. For example, the parties dispute whether Plaintiff knew he was permanently disabled eight months before he filed his claim with NYLIC. As NYLIC acknowledged in its Opposition/Cross Motion for summary judgment "[a]t a minimum, discovery…needs to cover…Plaintiff's delay in submitting his disability claim until December 11, 2022, even though he declares to have been permanently disabled as of April 19, 2022, all of which may impact any purported 2-year contestability limitation." Dkt. 27 at 12.

Notably, the parties' briefing focuses only on the element of "detrimental reliance." *See e.g.*, Dkt. 30 at 7. Stockton argues that NYLIC failed to establish that "'the estopped must have caused the other party to occupy a more disadvantageous position than that which he would have occupied except for that conduct.'" Dkt. 30 at 7 (quoting *Wells v. Goodyear Tire & Rubber Co.*,

10

2013 Va. App. LEXIS 376 (Va. Ct. App. 2013). The Court agrees. NYLIC argues that had Plaintiff's claim been submitted within the 2-year period, NYLIC's recission would not have been barred by the incontestability clause. Thus, it is in a "more disadvantageous position." *See Brown v. Massachusetts Cas. Ins. Co.*, 62 F.3d 1423, *2 (C.D. Cal. 1995) (finding that a deliberate delay in filing the notice of claim and proof of loss bars plaintiff from invoking the incontestability clause as a defense to the insurer's claim of fraud in the policy application). But NYLIC has offered no evidence that had Stockton submitted his claim when he left his job in April 2022 that it would have investigated the claim and rescinded the Policy before the incontestability period expired in June 2022. Accordingly, summary judgment is inappropriate.

### C. There is a Genuine Dispute as to Stockton's Entitlement to Benefits Under the Policy

Finally, Stockton seeks summary judgment that he is entitled to benefits under the Policy. He argues that NYLIC waived its right to assert any basis, other than recission, for denying Stockton's disability claim because it did not do so in its initial response to Plaintiff's claim. NYLIC counters it has not waived its right to deny disability income benefits should its recission ultimately be set aside. The Court agrees with NYLIC.

NYLIC did not waive its right to deny Stockton's claim on the grounds that he is not entitled to coverage under the contract. "[I]t is the general and quite well settled rule of law that the principles of estoppel and implied waiver do not operate to extend the coverage of an insurance policy after the liability has been incurred or the loss sustained." *See Ins. Co. of N. Am. v. Atl. Nat. Ins. Co.*, 329 F.2d 769, 775 (4th Cir. 1964); *Norman v. Insurance Co. of North America*, 239 S.E. 2d 902, *729 (Va. 1978); *Century Communities of Ga., LLC v. Selective Way Ins. Co.,* 2023 WL 2237303 (11th Cir. Feb. 27, 2023). In other words, if the plaintiff is not entitled to coverage under the terms of the contract, the contract cannot be reformed by waiver to

11

mandate coverage. *See Ins. Co. of N. Am.* 2023 WL 2237303 at *775 ("[T]he doctrine of waiver cannot be invoked to create a primary liability and bring within the coverage of the policy risks not included or contemplated by its terms."). Here, if Stockton is not entitled to coverage under the terms of the contract because, for example, he is not actually disabled, NYLIC cannot be required to provide coverage simply because it improperly rescinded the contract. Absent discovery, it is impossible to determine whether Stockton has a valid disability claim under the policy. Thus, summary judgment on Stockton's entitlement to benefits is not appropriate. *See* Federal Rule of Civil Procedure 56(d) (providing that a district court must defer ruling on a summary-judgment motion if the party opposing the motion "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition.").

### IV.    Conclusion

For the reasons above, the Court **GRANTS** in part and **DENIES** in part Plaintiff's Motion for Summary Judgment. The Court **DENIES** Defendant's Motion for Summary Judgment.

Entered:  May 24, 2024

*Robert S. Ballou*

Robert S. Ballou
United States District Judge