## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED

March 31, 2026

LAURA A. AUSTIN, CLERK
BY: **/s/ E. Jones**
DEPUTY CLERK

| | | |
|---|---|---|
| **SHERRILL WORTH STOCKTON, III,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.: 7:23-cv-00646** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **NEW YORK LIFE INSURANCE CO.,** | ) | **By: Hon. Robert S. Ballou** |
| | ) | **United States District Judge** |
| **Defendant.** | ) | |
| | ) | |

### MEMORANDUM OPINION

This matter comes before the Court on Plaintiff's Motion to Dismiss Defendant's Counterclaims, Dkt. 78. I previously denied Plaintiff Sherrill Worth Stockton, III's motion to dismiss Defendant New York Life Insurance Co.'s ("NY Life") counterclaims alleging fraud in the inducement and breach of contract. Dkt. 97. I took under advisement Stockton's motion to dismiss NY Life's fraud counterclaim and ordered both parties to file supplemental briefs addressing whether the "source of duty" rule articulated in *Dunn Construction Co. v. Cloney*, 682 S.E.2d 943 (Va. 2009), bars NY Life's fraud counterclaim. Dkt. 97. The parties have done so, and this matter is ripe for disposition.[1]

---

[1] In its briefing, NY Life makes a procedural objection that the "source of duty" question was not raised by Stockton in his original motion to dismiss but was, instead, raised by the Court itself. The Court's decision to raise the source of duty issue sua sponte does not constitute error. Federal courts are permitted to consider dispositive legal questions not explicitly raised by the parties where those questions are necessary to the resolution of the case. *See U.S. Nat'l Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 447 (1993) (noting that "a court may consider an issue antecedent to . . . and ultimately dispositive of the dispute before it, even an issue the parties fail to identify and brief") (citation modified); *Short v. Hartman*, 87 F.4th 593, 604 (4th Cir. 2023), *cert. denied*, 219 L. Ed. 2d 1269 (2024). Accordingly, the source of duty issue is properly before the Court.

For the reasons below, Stockton's motion to dismiss NY Life's fraud counterclaim is

**GRANTED**.

## I.    Background

At issue in this case is a group disability income insurance policy that NY Life issued to

Stockton. This contract is governed by Virginia law. On April 11, 2025, NY Life filed

counterclaims for fraud, fraud in the inducement, and breach of contract.

NY Life's fraud counterclaim alleges that Stockton made false representations and

concealed material facts in his disability insurance claim filed on December 11, 2022.

Specifically, NY Life contends that Stockton: (1) asserted a false disability date of April 19,

2022, without corresponding medical diagnosis from the identified healthcare providers; (2)

concealed that he returned to work after his claimed disability date; and (3) concealed the extent

of his other insurance coverage and the disability benefits provided under those policies.

NY Life argues that Stockton's submission of his claim "in a wrongful manner"

constitutes "malfeasance or misfeasance," thereby creating common law tort duties separate and

distinct from the contractual duty to submit truthful claims. Dkt. 103 at 1–2. Stockton counters

that the source of any duty owed here arises solely from the insurance contract, and therefore the

fraud claim must be dismissed pursuant to Virginia's source of duty rule. *See generally* Dkt. 102.

## II.    Standard of Review

"A complaint must contain sufficient factual matter . . . to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Legal conclusions, however, are not

entitled to the same presumption of truth. *Ashcroft*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555

(noting that while detailed factual allegations are not required, a plaintiff must still provide more

than labels, conclusions, or a "formulaic recitation of the elements of a cause of action").

### III.    Analysis

#### A.  Virginia's "Source of Duty" Rule

Virginia courts have consistently held that where a contract alone provides the basis for a

duty, the failure to perform the duty cannot give rise to a tort action. *See Filak v. George*, 594

S.E.2d 610, 613 (Va. 2004); *Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.*, 507 S.E. 2d

344, 347 (Va. 1998). However, if the conduct that gives rise to the breach of contract

simultaneously violates a duty that exists independently of the contract, that conduct may give

rise to claims in both contract and tort. *Richmond Metro. Auth*, 507 S.E. 2d at 347.

The Virginia Supreme Court's decision in *Dunn Construction Co. v. Cloney*, 682 S.E.2d

943 (Va. 2009), is instructive. There, a contractor breached its construction contract by

improperly building a foundation wall. After allegedly repairing the defect, the contractor falsely

represented to the homeowner that the repairs were adequate, inducing the homeowner to pay the

final contract price. The court in *Dunn* held that despite the false representation, the homeowner

could not pursue a fraud claim because the duty breached—to construct the foundation in a

workmanlike manner—arose solely from the contract, not from common law. *Id.* at 947.

Nearly a decade later, the Virginia Supreme Court in *MCR Federal, LLC v. JB&A, Inc.*,

808 S.E.2d 186 (Va. 2017), reinforced the principle that the law of torts does not sustain fraud

claims based on false contractual representations. In *MCR Federal, LLC*, a government

contracting business sued its buyer for breach of contract and fraud, alleging that the buyer

falsely reaffirmed contractual warranties at closing through a "bring down certificate." The court

explained that the seller could not bring a fraud claim because the source of the duty to certify

the accuracy of the contract's representations and warranties as of the closing date arose from the parties' purchase agreement. *Id.* at 193–94. "The fact that delivery of the bring down certificate was a condition precedent to closing, rather than a contractual duty, 'does not take the fraud outside of the contractual relationship.'" *Id.* at 193 (quoting *Dunn Const. Co.*, 682 S.E.2d at 947).

Finally, the Virginia Supreme Court's most recent authoritative guidance comes from *Tingler v. Graystone Homes, Inc.*, 834 S.E.2d 244 (Va. 2019). *Tingler* clarified that the source-of-duty rule contains limited exceptions for cases involving true "misfeasance" or "malfeasance," but these exceptions do not apply when a fraudulent misrepresentation is inextricably entwined with the performance of a contractual obligation. *See id.* at 256–58. The court recognized *Dunn Construction Co.* as such a case, noting that the builder's false representations "entwined with a breach of the contract" and therefore "could not fairly be said to fall 'outside of the contract relationship.'" *Tingler*, 834 S.E.2d at 258 (*quoting Dunn Const. Co.*, 682 S.E.2d at 943). By contrast, *Tingler* cited *Kaltman v. All American Pest Control, Inc.*, 706 S.E.2d 864 (Va. 2011), as an example where misfeasance existed outside the contractual relationship. In *Kaltman*, a pest control contractor used a dangerous commercial pesticide instead of a licensed residential pesticide. The court held that the homeowner alleged a prima facie tort claim because "[i]t was the contractor's affirmative act of using a dangerous pesticide, not the failure to use a safe pesticide, that mattered." *Tingler*, 834 S.E.2d at 257 (citing *Kaltman*, 706 S.E.2d at 864). A key question, therefore, is whether a party did something physically different or more dangerous than called for in the contract.

### B. Stockton's Duty to Submit Truthful Claims Arises Solely from the Insurance Contract

The issue here is the source of Stockton's duty not to submit false information in his

disability claim. In this case, it is the insurance policy that requires submission of truthful claims, as the entire contractual exchange depends upon accurate representations about the existence and nature of the claimed disability. Any alleged misrepresentations on Stockton's part relate to the performance of the contract itself as part of the claim submission process, and any dispute about the validity of Stockton's claim is nothing more than a contractual dispute. *See, e.g.*, *ITility, LLC v. Staffing Res. Grp., Inc.*, No. 1:20-CV-477, 2020 WL 6701361, at *4 (E.D. Va. Nov. 13, 2020) (finding that plaintiff's claim that defendant provided false and forged certifications required under the contract was "part and parcel of [defendant's] performance of its contractual duty").

The situation here is no different than that in *Atlantic Coast Athletic Clubs, Inc. v. Cincinnatti Insurance Company, Inc.*, No. 3:20-CV-00049, 2022 WL 1125800 (W.D. Va. Apr. 14, 2022). In that case, the insured plaintiff alleged that its insurance company and the company's adjuster committed fraud by falsely stating they would investigate the plaintiff's claim. The court, however, found that the plaintiff was precluded from asserting a fraud claim because the claim "does not support the existence of any duty [the adjuster] had except as arose from the existence of the insurance policy." *Id.* at *3. Likewise, NY Life has failed to identify any duty that the law imposed upon Stockton other than those that would arise from his contractual duties under the disability policy.

NY Life attempts to invoke *Tingler*'s misfeasance exception by arguing that Stockton did not merely fail to perform (nonfeasance) but instead actively and wrongfully submitted false information and concealed material facts (misfeasance). This distinction is unpersuasive. Unlike the contractor's use of a dangerous pesticide in *Kaltman*, Stockton's submission of his disability claim was not substantively different from the benefit he sought under the disability policy. Submitting a claim truthfully versus untruthfully, with complete versus incomplete information,

5

both constitute submission of a claim. This situation is more analogous to *Dunn*, where the builder either did repair the foundation wall or only claimed to have done so. The act was the same, and the question was whether the repair was adequate under the contract. Similarly, Stockton's submission of his claim was what the contract required, and whether the claim was accurate and complete goes to whether Stockton breached the contract.

NY Life's position is further undermined by *MCR Federal*, in which the court rejected the distinction between a condition precedent and a contractual duty. Here, filing a truthful disability claim functions as a condition precedent to obtaining benefits under the policy. NY Life has no duty to pay benefits unless and until a truthful claim has been submitted. The condition precedent nature of this obligation "does not take the fraud outside of the contractual relationship." *MCR Fed., LLC*, 808 S.E.2d at 194 (quoting *Dunn Const. Co.*, 682 S.E.2d at 947). Rather, the source of the duty to make accurate representations about the disability is the contract, not common law.

While NY Life argues that Stockton owed a common law duty to submit truthful claims pursuant to the maxim *sic utere tuo ut alienum non laedas* ("one must so use his own rights as not to infringe upon the rights of another"), *Cline v. Dunlora S., LLC*, 726 S.E.2d 14, 17 (Va. 2012), this argument stretches the principle too far. The duty not to cause harm by submitting false information in an insurance claim is not a pre-existing common law duty separate from the contract. *Cf. ITility, LLC*, 2020 WL 6701361, at *4 (rejecting plaintiff's theory that defendant "breached a common law duty to be truthful"). Rather, it is a duty that exists only because the contract exists. If NY Life's theory were adopted, virtually every insurance dispute could be recharacterized as fraud simply because the policyholder submitted inaccurate information. This is precisely what Virginia law forbids. *See Dunn Const. Co.*, 682 S.E.2d at 947 ("[W]e cannot

permit 'turning every breach of contract into an actionable claim for fraud' simply because of misrepresentations of the contractor entwined with a breach of the contract." (quoting *Richmond Metro. Auth.*, 507 S.E.2d at 348)).

All is not lost for NY Life. Stockton, as an insured seeking disability benefits under the disability policy, has a contractual obligation to submit a claim that complies with the policy conditions and brings him within the coverage provided under the policy. Complying with notice of claims provisions is frequently considered a condition precedent to coverage. *See Lyon v. Paul Revere Life Ins. Co.*, 289 F. Supp. 2d 740, 743 (W.D. Va. 2002) (collecting cases). The failure to comply with policy conditions may result in the denial of coverage. That is an issue for resolution on another day. But, for today, fraud is not a proper vehicle to challenge whether Stockton has submitted a proper claim for disability coverage.

## IV.     Conclusion

The source of duty rule bars NY Life's fraud counterclaim. The duty allegedly violated—to submit truthful and accurate information in a disability insurance claim—arises solely from the insurance contract between the parties, not from common law. While Stockton may have submitted an inaccurate claim, thereby breaching his contractual obligations to NY Life, this breach does not give rise to a separate tort action for fraud.

Accordingly, Plaintiff's Motion to Dismiss as to Defendant's fraud counterclaim is **GRANTED**.

Entered:  March 31, 2026

*Robert S. Ballou*

Robert S. Ballou
United States District Judge

7